PORTO RICAN AND AMERICAN INSURANCE COMPANY, Plaintiff and Appellant, *v.* HUMBERTO DURÁN MANZANAL, Defendant and Appellee.

No. R-63-131.    Decided April 21, 1965.

*Héctor Martínez Muñoz* and *José Enrique Otero* for appellant.
*Carlos D. Vázquez* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

This is a claim filed by an insurance company subrogated in the rights and actions of its assured, in which it is alleged that three motor vehicles belonging to the Caribe Motors Corporation which were under the keeping, custody, and possession of defendant-appellee Humberto Durán Manzanal in his shop, which he operated under the name of Garage Humberto were burnt and totally lost; it is also alleged that the loss was solely and exclusively the result of defendant-appellee's negligence.

Said defendant-appellee answered accepting the fact that the automobiles were burned while in his possession, and denied, for lack of information, the insurer-assured relationship between the Porto Rican and American Insurance Co. and the Caribe Motors Corporation and denied, of his own knowledge, that the loss was solely and exclusively due to his negligence. As to the cause of the fire defendant-appellee alleged that such fire was a "fortuitous and unfortunate event or caused by *force majeure* and not the result of defendant's negligence," since defendant all the time prior to the occurrence of the fire had acted with the due diligence of a good father of a family.

Plaintiff-appellant presented an interrogatory requesting defendant to answer the following question: "State the date on which defendant Humberto Durán first occupied the premises on 12 Street corner of I *where the fire originated*," it being answered by defendant-appellee in the following terms: "About 7 or 8 years prior to the fire, I do not remember the exact date."

At the hearing of the case and when the evidence was being introduced, counsel for plaintiff informed the Court the following:

"Mr. Martínez:—In this case the parties have stipulated the following facts which do not appear as admitted in the allegations. We have stipulated the value of the vehicles involved in the fire referred to in the second paragraph of the complaint. Said value is four thousand one hundred dollars ($4,100) now, Your Honor; there was a recovery amounting to four hundred eighteen dollars and sixty-nine cents ($418.69) which represents the value of the salvage of the three vehicles. Then the claim would be reduced to three thousand six hundred eighty-one dollars and thirty-one cents ($3,681.31). The facts alleged in paragraph two referring to the policy, the payments made to the Caribe Motors and the right to subrogation have been admitted by defendant.

"Hon. Judge:   Q. What else?

"A. (Mr. Martínez) Therefore there only remains to determine defendant's liability, if there is any. In direct proof, Your Honor, we shall offer in evidence the . . . .

"Hon. Judge:   Of Plaintiff? There only remains defendant's liability.

"A. (Mr. Martínez) Yes, sir. As direct evidence plaintiff offers defendant's answers No. 2 and No. 8 given by him to questions with the same numbers in an interrogatory signed on January 26, 1962. The answers to questions Nos. 2 and 8 and that is our case."

The questions and answers alluded to are the following:

"Q. State for what purpose were the premises used by defendant Humberto Durán.

"A. For automobile tinwork and painting repairs.

"Q. State whether or not you performed an investigation on the cause or causes of the fire to which this action refers, and if you did, give the results obtained from said investigation, the name and address of the persons intervening in the same and attach a copy of any report or reports which may have been rendered on the cause or causes of the fire.

"A. The cause is unknown."

The trial court, based on the testimonies accepted in evidence for defendant-appellee found proved the fact that the fire originated in "the shop known as 'Garage Pepín' belonging to José Torres which was adjacent to defendant's shop, spreading in a few minutes to defendant's shop, which (defendant's shop) was destroyed by the flames" and as to the negligence, if it were necessary, it found proved "that since 1958 defendant had the electric installation in his shop through conduit of galvanized iron pipes provided with a safety box which interrupted the current in the event of a short circuit. That, likewise, he had fire extinguishers in his shop and as a precaution he kept the paint and thinner in a zinc-covered room in the yard, together with the acetylene generators which were secured and inspected before closing the shop."

The conclusion of the trial court in the sense that the juridical relation existing between Caribe Motors Corporation and Humberto Durán Manzanal was a bailor-bailee relationship and that the destruction of the thing in deposit was the result of a fortuitous event was entirely correct.

The law applicable in this case is the following sections of the Civil Code of Puerto Rico: Article 1658 provides: "A depositum is constituted from the time a person receives a thing belonging to another with the obligation of keeping and returning it," related to § 1136 which provides: "An obligation, consisting in the delivery of a specified thing, shall be extinguished when said thing should be lost or destroyed without fault of the debtor and before he should be in

default," § 1137 provides: "Whenever the thing should be lost, when in the possession of the debtor, it shall be presumed that the loss occurred by his fault and not by a fortuitous event, unless there is proof to the contrary . . ." and § 1058 provides: "No one shall be liable for events which could not be foreseen, or which having been foreseen were inevitable, with the exception of the cases expressly mentioned in the law or those in which the obligation so declares."

■ We understand that the best definition for fortuitous event (*casus fortuitus*) is that contained in Title XXXIII of Law XI of the Seventh Partida which says: "We also decree that *casus fortuitus* means in Castilian, an accident which happens by chance, and cannot be foreseen; such as the following, namely: the destruction of houses by fire which suddenly breaks out; the wreck of a ship; the violence of robbers or enemies." Vide: II Las Siete Partidas 418 (Panckoucke Printing Press, Paris, 1846 ed.) The requisites for determining whether any event is a "casus fortuitus" are the following: (1) That the event or occurrence producing it is not contingent on the will of the person doing the service, or chargeable to the latter it having originated in an accident *fatum fatalitas*; (2) that the event be unforeseen or inevitable, in the sense of not being within the scope of the reasonable and customary diligence of the person under obligation; (3) that the nonperformance presupposes impossibility and not mere difficulty.

■■ The principle of irresponsibility of the bailee when the thing is lost through a fortuitous event, as in the case of a fire which originates in the premises adjacent to those of bailee, is clearly established by the most reliable gloss of civil Law. Let us begin with the general aspects of the question: "The traditional system considered in the Roman texts and in our Laws of Partidas, consisted in imposing on bailee, as a general rule, only the liabilities of *dolus* and *culpa lata*, but attributing, to him, in special cases, that

of *culpa levis* and even those of the fortuitous event (if it had been so established). The French Code adopted a different system, consisting in imposing on the bailee, generally, not the negligence abstractedly weighed (diligence of a good father of a family) but the negligence *in concreto* (the customary diligence exercised by bailee himself in the custody of his things), although restoring, in certain exceptional cases, the application of the principle of *culpa levis* in the abstract. Well, our Spanish Code has not adopted any of the preceding systems. It limits itself to stating that bailee's liability with respect to the keeping and loss of the thing shall be governed by the provisions on obligations in general of title I of Book IV—§ 1766, 2nd paragraph—[1666 ours] which is equivalent to imposing on bailee the diligences stated in the contract, or, in default thereof, those observed by a good father of a family—§ 1104— [1057 ours], without the distinction of cases or the classifications of negligence admitted in the traditional doctrine": 4 Castán, *Derecho Civil Español, Común y Foral* 620 (7th Reus ed. 1952). Puig Peña says: "It [our Code] limits itself to stating that the liability of bailee as to the keeping (and the loss of the thing) shall be governed by the provisions of Title I of Book IV; that is, it refers on this question to the general theory of the liability in the obligations—§§ 1100 to 1107—[1053 to 1060 ours]. This is equivalent to imposing on the bailee, as we said, the action promised in the contract or inferred from the nature of the obligation and proper of a good father of a family. Whenever it is not observed, liability will be incurred without taking into account the classification admitted in the classic doctrine." IV-II Puig Peña: *Tratado Derecho Civil Español* 434 (Revista de Derecho Privado 1951 ed.).

"As to the fortuitous event occurred prior to the expiration of the term of depositum the general rule of irresponsibility is applicable: this circumstance is common to the bailee and to all the debtors of the thing; *res perit domino.*

.The evidence of the fortuitous event evidently falls on the bailee; a doctrine repeatedly sanctioned by the Supreme Court (Spain) since the judgment of December 17, 1859," 11 Manresa, *Comentarios al Código Civil Español* 679 (Reus 5th ed. 1950).

■ It seems plaintiff-appellant relied on the presumption established in § 1137 of our Civil Code, in the sense that, whenever the thing should be lost, when in possession of the debtor (the bailee in this case) *it shall be presumed* that the loss occurred by the fault of bailee and not by a fortuitous event, unless there is proof to the contrary, and in the possible error of the answer to question No. 1 of the interrogatory presented by plaintiff-appellant on January 29, 1962, without realizing that it was stated in the question that the fire had originated in the premises of defendant-appellee Humberto Durán. The possible admission is devoid of any juridical effect when the second and third defenses of the amended answer are examined, in which it is alleged that the fire on which defendant's claim is based was a fortuitous and unfortunate event and not the result of defendant-appellee's negligence and even in the event that it had originated in defendant-appellee's own shop, a fact which was not found proved by the trial court, the diligence of a good father of a family was alleged and proved by defendant-appellee.

For the reasons stated the judgment of April 18, 1963 rendered by the Superior Court of Puerto Rico, San Juan Part, is affirmed.